MIGUEL LORENZO, Plaintiff and Appellant, *v.* JESÚS LORENZO PÉREZ, Defendant and Appellee.

No. 6762. Argued December 18, 1935.—Decided December 24, 1935.

*José Veray, Jr.,* for appellant. *García Méndez & García Méndez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Miguel Lorenzo brought, in the District Court of Aguadilla, an action against Jesús Lorenzo, to recover $4,000 as damages caused by the latter to the former on September 24, 1931, in the ward of Voladores when he assaulted and battered him, wilfully and maliciously, with a machete, almost totally severing his right arm.

The defendant in his answer denied the allegations of the complaint and in his turn set up as special defenses that the complaint did not state facts sufficient to constitute a cause of action, and that if the accident occurred, the same could not be avoided by the defendant, and was due to the temerity, malice, and wilfullness of the plaintiff.

The case went to trial. Both parties introduced their evidence, and the court, on July 31, 1933, rendered judgment for the defendant, without special imposition of costs. In its statement of the case and opinion, it made the following findings:

"That on or about September 4, 1931, and while the defendant Jesús Lorenzo was working in his property, he set out for the shop of Gil Sánchez, which is located near the highway and at a short distance from the said property in order to buy some supplies for his house; that when he was passing in front of the shop of Antonio

Soto, which lies between defendant's property and the shop of Gil
Sánchez, plaintiff Miguel Lorenzo and defendant Jesús Lorenzo had
an argument because the former wanted the latter to drink some
rum, which the defendant refused, whereupon the plaintiff threatened
to throw the rum on defendant's face, insulting him in a most
mortifying manner; that Jesús Lorenzo continued on his way to the
shop of Gil Sánchez, where he purchased said supplies consisting of
codfish, bread, and sugar and then started to return to his house
carrying the supplies in his right hand and a machete, with which
he had just been working, under his left arm; that while passing
again in front of the shop of Antonio Soto, along a road known as
'Hernández,' over which he necessarily had to pass, Miguel Lorenzo
walked up to him and stopped him; Miguel Lorenzo, that is the
plaintiff, a strong young man, told Jesús Lorenzo, who is an old
man, ''eat that banana'' while he rubbed against his mouth and
mustache a ripe banana that was half peeled, and then grabbed him
by the neck and attempted to force him to eat it; Jesús Lorenzo
then cried out 'help, I am being killed,' and Miguel Lorenzo, still
holding him tightly said 'now you will see if you eat it,' and at the
same time he pulled out a knife about six inches long, double-edged
and with a red handle forming a cross; that when in a defying and
most threatening manner he attempted to wound Jesús Lorenzo
with the knife, the latter suddenly dropped to the ground the pur-
chased goods and, defending himself with the machete used in his
work, infflicted on Miguel Lorenzo, plaintiff herein, a single wound.

Feeling aggrieved by that judgment, the plaintiff took an
appeal to this court. In his brief he has assigned two errors
committed, as he claims, by the trial court in not taking into
consideration the ''judicial admission'' made in open court
by the defendant wherein he pleaded guilty to a charge
of mayhem, based on the same facts alleged in the complaint;
and in weighing the evidence.

The first witness to testify was the plaintiff himself. He
said, in part: ''On that day, as I was coming from a bu-
rial . . . Jesús Lorenzo was going . . . and upon seeing me,
he said, 'Listen, scoundrel, now you are going to pay all you
owe me,' and right away he attacked me with his machete.''

Then the plaintiff called to the stand the medical expert,
Dr. Néstor de Cardona, who described the wound received

by the plaintiff as follows: "It was an incised, transvere wound which not only cut through the soft tissues but also through the osseous ones, and almost severed his arm."

The next witness was the deputy clerk of the court, whom the plaintiff called in order to introduce in evidence "a judicial admission made in open court by the defendant, Jesús Lorenzo, on July 13, 1932, in criminal case no. 4725, prosecuted by the People of Puerto Rico against the said Jesús Lorenzo for mayhem, upon an information filed and sworn to by the prosecuting attorney of this court and based on the same acts committed by the defendant on September. 24, 1931, against the person of Miguel Lorenzo, the present plaintiff, and in which judicial admission made in open court the defendant admitted the commission of those acts; and we rely on what is set forth in Volume 22 of Corpus Juris, page 421, paragraph B, entitled 'Judicial Admissions,' and at page 423 of the same volume, under paragraph 506, entitled 'In Other Proceedings.' "

The defendant objected and the court ruled in his favor. The plaintiff took an exception and requested that "since this evidence has not been admitted by the court, we ask that these two documents, the information and the judgment, be marked 'Exhibits A and B,' as documents whose admission has been refused by the court, and that the stenographer be ordered to copy them literally in the transcript of the evidence, to be reviewed in a possible appeal, in order that the Hon. Supreme Court may be fully advised as to the question raised."

The court then stated that it thought it advisable to reconsider its decision and to conditionally admit the evidence, and as it was then 12 o'clock noon, the court took a recess. Upon the trial being resumed, the plaintiff requested the court to definitely decide whether or not it admitted the documents, invoking the opinion of this Supreme Court in the case of *People ex rel Mendín* v. *Seijo,* 43 P.R.R. 352, and the court decided to unconditionally admit the evidence.

The first document offered was the information. It says in part:

"The district attorney files this information against Jesús Lorenzo Méndez for the crime of mayhem, a felony, committed in the following manner: The said defendant, Jesús Lorenzo Méndez, prior to the filing of this information, that is, on or about September 24, 1931, in the ward of Voladores, municipal district of Moca, . . . maliciously and wilfully, and with the criminal intent to inflict serious bodily injury upon the person of Miguel Lorenzo, assaulted and battered him with a machete, a deadly weapon, inflicting on him a serious wound . . . and as a direct consequence of that wound the said Miguel Lorenzo has suffered the total and permanent mutilation of his right hand."

The second document, the judgment, reads as follows:

"District Court for the Judicial District of Aguadilla, P. R.—People of Puerto Rico v. Jesús Lorenzo Méndez, Criminal No. 4725. —Mayhem—Judgment.—Whereas, in this day and in open court the defendant Jesús Lorenzo personally appeared and pleaded guilty to the crime of mayhem, said crime consisting in that the said defendant on or about September 24, 1931, in the ward of Voladores . . . Whereas, in view of the plea of guilty entered by said defendant, the court, in compliance with the law, convicted him of the aforesaid crime.—Whereas, the convicted party Jesús Lorenzo Méndez waived the term to render judgment . . .—The court adjudges that it must sentence and does hereby sentence the defendant, Jesús Lorenzo Méndez, as guilty and convicted of the aforesaid crime of mayhem, to six months' imprisonment in the penitentiary at hard labor, . . ."

And so ended the evidence of the plaintiff. That of the defendant consisted in the testimony of Pedro López, Jenaro Lorenzo, Agustín Hernández, and the defendant himself.

The first-named witness stated:

"That day I was carrying some timber from one place to another; where that happened there is a house and there is an alley that runs like this; I was in the rear of the alley . . . .; suddenly, when I was lifting a load. I heard some one yell 'help, help' and immediately I put down the load and I looked over that way and I saw this man grappling with the other one . . .

Jesús Lorenzo, while Miguel Lorenzo held a ripe banana in his hand and was rubbing it against Jesús Lorenzo's mouth . . . While he was rubbing the banana against the mouth of Jesús Lorenzo, the latter said 'look, I am an old man and I don't want to fight with you; let me go on my way' and then Miguel Lorenzo answered, 'You are going to eat it' and he threw down the banana and thrust his hand underneath his shirt towards the belt, and pulled out a knife; then, this one had some packages . . . Yes, sir; and he had a machete under his left arm, and when he saw the other one attack him, he threw down what he had in his right hand and pulled the machete out and struck at him and the other one was wounded; then Jesús Lorenzo ran to his house and Jenaro Lorenzo ran after him throwing stones at him and hitting him several times.''

The second witness, Jenaro Lorenzo, a brother of the plaintiff, testified thus:

''While I was at the house of Gil Sánchez, at Gil Sánchez's shop, Jesús Lorenzo arrived there at about 4 o'clock in the afternoon to buy some things and he had a machete under his arm; he bought his supplies and after making the purchase, he inquired about how he could reach his home by way of the road called 'Hernández' as he had an argument with Miguel Lorenzo, and then Gil Sánchez told him to go on, that perhaps nothing would happen to ves, he had an unpeeled, ripe banana in his hand, and told him, him; then he left and I followed him upon learning that the trouble Lorenzo, my brother, ran out of the house of Juan Higinio Nieves, he had an umpeeled, ripe banana in his hand, and told him, 'Listen, Jesús, eat some of this banana' and he rubbed it against his mustache, and Jesús was saying, 'show some respect for me . . . I am an old man and you should respect me,' but Miguel Lorenzo continued to rub the banana against his mouth until I heard him cry out 'help, he is killing me.'—Q. Who said that?—R. Jesús Lorenzo, because my brother pulled out a knife about five or six inches long, having a red handle; perhaps my brother had no intention of wounding him, but merely to see him run away, because Jesús Lorenzo is a coward; but when Miguel Lorenzo pulled out the knife, Jesús Lorenzo threw down the packages he had in his right hand, grabbed the machete he had under his left arm, and struck my brother with it, cutting his left arm; then Jesús Lorenzo ran away and I hit him from the back with several stones I threw at him.''

The third witness said little.  He merely stated:

"Shortly afterwards, when I was leaving Gil Sánchez's shop, Jesús Lorenzo was walking with his supplies and Miguel Lorenzo was leaving Antonio Soto's shop, located there, eating a ripe banana; and then, as Jesús Lorenzo was passing by, Miguel Lorenzo tried to speak with him or something like that while he had the ripe banana in his hand, and then I left."

The testimony of the defendant is a full one.  He stated that "while I was leaving my home at about four o'clock in the afternoon, to buy a few things at Gil Sánchez's shop. . . in front of the house of Juan Higinio Nieves, . . . this man (the plaintiff) was there, and he called me and told me, 'Jesús, come here and take a drink of rum'; then I went in and told him 'you order your drink and I'll pay for it, but I can't drink."  The plaintiff insisted that I drink and several men who were there "told me, 'Jesús, go away, what this man wants is to beat you up' and I paid no attention and went out."  He arrived at Sánchez's shop, "I told him what had happened to me and I said, 'Miguel Lorenzo wants to strike me, and I can't make up any mind to go by there'; then I purchased my supplies—a pound of codfish, two pounds of sugar, and half a pound of bread—and I carried it in my hands; . . . then Gil Sánchez said 'You go on, probably nothing will happen to you,' and then I put my machete under my arm, right here, and I left . . . and I was entering the alley . . . . Miguel Lorenzo came over, stood in my way, and told me, 'here, Chucho, eat this banana'; then I told him 'don't abuse me; let me go by, I'm not a quarreling man; I am a working man,' but he insisted and said, 'you are going to eat it anyway,' and he tried to grab me by the neck, pulled out a knife and attacked me with it; then I retreated three steps, pulled out my machete, and struck at him with the flat of the blade, but unfortunately wounded him."

In explaining what had happened in connection with the criminal prosecution instituted against him, he stated that he

gave his attorney $300 to defend him at the trial, and that the jury was unable to arrive at a verdict; then he told his other lawyer that he had no money to pay him, and the attorney told him, "You may go, I'll take care of fixing up your case" and "then, in order that the court should consider me, I pleaded guilty, but I have never been guilty."

After the close of defendant's evidence, the plaintiff called Gerardo Lorenzo to the stand who testified that Pedro López went up to Jenaro Lorenzo and told him, "Jesús Lorenzo sends you this eight dollars, and he wants you not to fail to state what you agreed with him to testify," and the defendant then recalled Pedro López who testified that it was utterly untrue that he had ever given any money to Jenaro Lorenzo from Jesús Lorenzo, or told him not to fail to testify what he had agreed with him to testify.

From an examination of the evidence and the briefs of both parties, we think that the judgment of the district court was justified.

In summarizing the decisions concerning the effect in civil suits of judgments rendered in criminal prosecutions, Ruling Case Law says:

"The general rule is that a judgment in a criminal prosecution is no bar to a subsequent civil action arising from the same transaction, and that the record of the criminal cause is not competent evidence in the civil action, save for the single purpose of proving its own existence, if that becomes a relevant fact, in which case not only is it admissible, but it is conclusive for the purpose of establishing the fact that it has been rendered. It cannot, however, be given in evidence in a civil action to establish the truth of the facts on which it was rendered. Hence one prosecuted and convicted of a criminal charge is not thereby estopped from maintaining a civil action and proving therein that he was innocent of the offense of which he was convicted. The converse is also true, and an acquittal upon a criminal charge is not a bar to a civil action brought against the defendant by the state, although in order to recover it must prove him to have been guilty of the offense as to which he has

already been acquitted. It has accordingly been held that a judgment of acquittal in a criminal prosecution is not admissible evidence in favor of the accused in a civil action to prove that he was not guilty of the crime with which he was charged.

"The general rule undoubtedly is that a judgment of conviction in a criminal prosecution cannot be given in evidence in a civil action, especially where the civil suit is for damages occasioned by the offense of which the party stands convicted. Thus the record of a conviction for an assault and battery is not admissible in a civil action arising out of the same circumstances." 15 R.C.L. 1000.

The reasons for this rule, as set forth in the decisions themselves, are as follows:

"As a foundation for this rule it has been pointed out that there is a dissimilarity in objects, issues, results, procedure, and parties in the two actions, and that different rules of evidence apply, both as to the weight of the evidence and the competency of witnesses. For a conviction may be the result of testimony not admissible in a civil action. And, while in criminal actions a defendant may not be compelled to testify, all of the parties may usually be compelled to testify in civil cases. To make the decision of a court in such a case evidence in a criminal proceeding would be to compel the defendant in the criminal case to be a witness against himself. Furthermore, in order to procure a conviction on a criminal charge, it must be established beyond a reasonable doubt that the defendant had violated the law, while to obtain a recovery in a civil action it is only necessary to show this by a preponderance of the evidence. This difference in the degree of proof required is generally considered sufficient to prevent the application of the doctrine of res judicata. It has properly been said that an acquittal in a criminal case does not for all purposes amount to an adjudication against the state that the defendant did not commit the acts charged against him. What a verdict of not guilty really decides is that the evidence does not exclude every reasonable doubt of the defendant's guilt." 15 R.C. L. 1002.

As it always happens, the rule has its exceptions, and one of them is the following:

"Where a defendant pleads guilty to a criminal charge the record of his conviction is admissible in a subsequent civil proceeding upon the issue whether he committed the act on which the criminal charge

was based; but in such a case the record of conviction is admitted, not as a judgment establishing the fact, but as a deliberate declaration or admission of the party himself that the fact is so. Yet the plea of guilty is not conclusive on the defendant in the civil action, and he may show that he is not in fact guilty of any offense.'' 15 R.C.L. 1003.

So that even in a case like the one we are now considering and deciding, which constitutes an exception, the court may weigh the evidence and decide, as it did here, that the defendant was not liable for the damages claimed in spite of his plea of guilty in the criminal prosecution.

What has happened here shows the wisdom of the doctrine as established by the decisions. Only in rare cases can one conceive that a person would plead guilty despite his innocence. But such cases may exist and it is fair to leave the door open to a limitation of the exception. Conceivably a man, feeling disheartened under the weight of the charge and of the occurrence itself, with his experience at the previous trial, being already penalized by the expenses incurred which probably took away the better part of his small resources, and faced with new sufferings and new burdens superior to his strength, would yied and admit his guilt and would seek rest in prison, in order to return later to his work without difficulties; especially if he is a farmer, old, and so averse to conflicts, that he even has the reputation of being a coward; and although he acted in self-defense, the truth is that he wounded a fellow being, a relative of his besides, and that such wound unfortunately deprived the latter of the use of his right hand. In such cases, a rigorous conscience, even though the law protects it, always accuses itself, as it blames itself for not having made a sacrifice before repelling by force the offense received.

The judgment appealed from must be confirmed.